1
2
3
4
5
6          **UNITED STATES DISTRICT COURT**
7          **EASTERN DISTRICT OF CALIFORNIA**
8
9

| | | |
|---|---|---|
| 10 **BETH MAXWELL STRATTON,** | ) | **CIV-F-06-1495 AWI** |
| 11        **Plaintiff**, | ) | **BANKRUPTCY CASE** |
| | ) | **NO. 05-17665-B-7** |
| 12    **v.** | ) | |
| | ) | **ADVERSARY PROCEEDING** |
| 13 **VICTOR GARCIA AND ROSEMARY** | ) | **NO. 06-1252** |
| **GARCIA,** | ) | |
| 14 | ) | |
|        **Defendants**. | ) | **ORDER RE: MOTION TO** |
| 15 _____ | ) | **WITHDRAW REFERENCE** |

16
17
18          The matter is before the court on Defendants' motion to withdraw an adversary
19  proceeding from the bankruptcy court to district court.  Plaintiff does not oppose the motion.  As
20  many of the relevant documents were originally filed in the bankruptcy court, but have not been
21  lodged with the district court, judicial notice of all documents filed in the adversary proceeding is
22  taken.[1]
23
24                                    **I. History**
25          Deborah Kaye Brown ("Debtor") filed a Chapter 7 bankruptcy in the Eastern District on
26  _____

27          [1]As all relevant documents are in the bankruptcy docket, all references in this order are to
    filings in <u>Beth Maxwell Stratton v. Victor M. and Rosemary Garcia</u>, E.D. Cal. Bankruptcy
28  Adversary Proceeding No. 06-1252.

                                          1

September 23, 2005.  The case was assigned to Bankruptcy Judge W. Richard Lee and Plaintiff Beth Maxwell Stratton was appointed as the Chapter 7 trustee.  In February 2005, Debtor sold property in Porterville, CA to Defendants Victor and Rosemary Garcia.  Plaintiff, in her capacity as trustee for Debtor's estate, now seeks to have that sale avoided as a fraudulent transfer, seeking recovery under 11 U.S.C. §548[2], the Uniform Fraudulent Transfer Act (Cal. Civ. Code §§3439-3439.12), rescission  under Cal. Civ. Code §1695 et. seq., and constructive trust (Cal Civ. Code §§2223-2224). Doc. 1.

On October 24, 2006, Defendants moved, in bankruptcy court, to have the matter withdrawn to the district court. Doc. 17.  On October 25, 2006, the motion was transferred to district court.  Plaintiff did not file a formal response to the motion.  However, she indicated in a status conference statement filed November 22, 2006 with the bankruptcy court that she did not oppose the motion. Doc. 27.

**II. Legal Standards**

Title 28 U.S.C. §157(d) states, "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  This language "contains two distinct provisions: the first sentence [for cause shown] allows permissive withdrawal, while the second sentence [U.S. laws affecting interstate commerce] requires mandatory withdrawal in certain situations." <u>In re Coe-Truman</u>

---

[2] Title 11 U.S.C. § 548(a)(1) permits a bankruptcy trustee to avoid transactions completed within a year prior to the debtor's filing of a petition for bankruptcy if the debtor (A) made the transaction with the intent to frustrate creditors or (B) "received less than a reasonably equivalent value in exchange for such transfer or obligation" and became insolvent as a result of the obligation.  The section was amended April 20, 2005 to extend the relevant transaction period from one to two years, applicable to bankruptcy petitions filed on or after April 20, 2006. Pub. L. No. 109-8, 119 Stat 23.  The allegedly fraudulent transfer in this case took place less than a year prior to the bankruptcy petition.

1  Technologies, Inc., 214 B.R. 183, 185 (N.D. Ill. 1997).  "The burden of demonstrating both

2  mandatory and discretionary withdrawal is on the movant." In re U.S. Airways Group, Inc., 296

3  B.R. 673, 667 (E.D. Va. 2003).  Any motion to withdraw must be timely. FTC v. First Alliance

4  Mortg. Co., 282 B.R. 894, 902 n.6 (C.D. Cal. 2001).

"Overwhelmingly courts and commentators agree that the mandatory withdrawal

provision cannot be given its broadest literal reading, for sending every proceeding that required

passing 'consideration' of non-bankruptcy law back to the district court would 'eviscerate much

of the work of the bankruptcy courts,' From a litigant's perspective, such a reading would also

create an 'escape hatch' by which bankruptcy matters could easily be removed to the district

court." In re Vicars Ins. Agency, Inc. 96 F.3d 949, 952 (7th Cir. 1996), citations omitted.  The

Ninth Circuit has stated in dictum that mandatory withdrawal of the reference hinged "on the

presence of substantial and material questions of federal law." Security Farms v. International

Bhd. of Teamsters, 124 F.3d 999, 1008 n.4 (9th Cir. 1997).

"There is no statutory definition of what constitutes 'cause shown' under 28 U.S.C.

§157(d). Typically, courts will first consider whether the proceeding is core or non-core, and will

thereafter evaluate a number of factors, including whether there has been a jury demand and

judicial economy considerations." In re Lars, Inc., 290 B.R. 467, 469 (D.P.R. 2003).  "In noncore

matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of

a magistrate or special master. In noncore matters, the bankruptcy court may not enter final

judgments without the consent of the parties, and its findings of fact and conclusions of law in

noncore matters are subject to de novo review by the district court....In contrast to the bankruptcy

court's authority in noncore cases, the bankruptcy court may enter final judgments in so-called

core cases, which are appealable to the district court." In re Castlerock Properties, 781 F.2d 159,

161 (9th Cir. 1986), citing Production Steel, Inc. v. Bethlehem Steel Corp., 48 B.R. 841, 844

(M.D. Tenn. 1985).  Title 28 U.S.C. §157(b)(2) provides a non-exhaustive list of core

proceedings.  "Courts attempting to analyze the status of a particular claim that is not listed in

section 157(b)(2) have considered factors such as whether the rights involved exist independent

of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy

1   petition, or were significantly affected by the filing of the bankruptcy case." In re Cinematronics,

2   Inc., 916 F.2d 1444, 1450 n.6 (9th Cir. 1990).  The Ninth Circuit counsels that "a district court

3   should consider the efficient use of judicial resources, delay and costs to the parties, uniformity

4   of bankruptcy administration, the prevention of forum shopping, and other related factors."

5   Security Farms v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen &

6   Helpers, 124 F.3d 999, 1008 (9th Cir. 1997), citing In re Orion Pictures Corp., 4 F.3d 1095, 1101

7   (2nd Cir. 1993).

8        When dealing with permissive withdrawal, where  parties have a "right to a jury trial,

9   have not waived that right, and have not consented to a jury trial before the bankruptcy court, the

10  court finds that it must withdraw the reference" even though all other factors weigh in favor of

11  leaving an action in bankruptcy court.[3] In re Com 21, 2005 U.S. Dist. LEXIS 34339, *35 (N.D.

12  Cal. 2005).  Generally, "In determining whether cause exists, a district court should consider the

13  efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy

14  administration, the prevention of forum shopping, and other related factors." Security Farms v.

15  International Bhd. of Teamsters, 124 F.3d 999, 1008 (9th Cir. 1997), citing In re Orion Pictures

16  Corp., 4 F.3d 1095, 1101 (2nd Cir. 1993).

17       "The Court has the option of withdrawing the entire adversary matter, or withdrawing

18  only the trial portion, leaving the pre-trial and discovery matters to be handled by the bankruptcy

19  judge." In re Lars, Inc., 290 B.R. 467, 469 (D.P.R. 2003).  The Ninth Circuit has approved of

20  such procedure in dicta: "[T]he Fourth Circuit has concluded that a bankruptcy court may

21  postpone withdrawal of the reference where a party asserts a right to a jury trial in the district

22  court. In such an instance, a bankruptcy court may perform pretrial functions short of jury

23  selection and trial, and presumably could dismiss a party's action for failure to comply with any

24  _____

25       [3]In this way, withdrawal is mandatory where there is a Seventh Amendment right to jury
    trial that has not been waived in some manner.  This factor has often been analyzed under the
26  permissive, for cause provision of 28 U.S.C. §157(d) rendering the commonly used terms
    "mandatory" and "permissive" misnomers.  Nevertheless, those terms have gained wide
27  acceptance.  This court will analyze whether the parties' have a right to jury trial as a separate
    category.
28

4

1    pretrial order. Here, however, the Northern District of California's local bankruptcy rules dictate

2    that the withdrawal of the reference is 'automatic'..." <u>Dunmore v. United States</u>, 358 F.3d 1107,

3    1117 (9th Cir. 2004), citing <u>Official Committee of Unsecured Creditors v. Schwartzman</u>, 13 F.3d

4    122, 128 (4th Cir. 1993).  The Eastern District has no equivalent local rule barring the procedure

5    outlined by the circuit courts.

6         "Courts have also recognized that it serves the interests of judicial economy and

7    efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial

8    matters, even if the action will ultimately be transferred to a district court for trial." <u>In re Enron</u>

9    <u>Corp.</u>, 295 B.R. 21, 28 (S.D.N.Y. 2003).  "The decision whether or not to withdraw the referral

10   immediately is frequently more a pragmatic question of efficient case administration than a

11   strictly legal decision. While the bankruptcy court may be uniquely qualified to conduct pre-trial

12   matters in some core proceedings, in other cases such a referral would be a futile detour,

13   requiring substantial duplication of judicial effort." <u>Official Committee of Unsecured Creditors</u>

14   <u>v. Schwartzman</u>, 13 F.3d 122, 128 (4th Cir. 1993), citing <u>Travelers Ins. Co. v. Goldberg</u>, 135

15   Bankr. 788, 792 (D. Md. 1992).

16

17                                  **III. Discussion**

18        Defendants argue that withdrawal is proper under all three categories: mandatory, jury

19   trial, and permissive withdrawal.

20

21   **A. Mandatory Withdrawal**

22        In support of their argument, Defendants state, "the trustee has requested one claim for

23   relief based on bankruptcy statutes [title 11] and the six remaining claims for relief based on

24   California law. All are based on rights conferred by statute. Doc. 21, Brief, at 5:1-3.  However,

25   the mandatory withdrawal provisions deals only with "consideration of both title 11 and other

26   laws of the United States regulating organizations or activities affecting interstate commerce." 28

27   U.S.C. §157(d).  Consideration of state laws does not give rise to mandatory withdrawal. See

28   e.g., <u>In re Com 21</u>, 2005 U.S. Dist. LEXIS 34339 (N.D. Cal. 2005); <u>Diagnostics In'l, Inc. v.</u>

1    Aerobic Life Prods. Co., 257 B.R. 511, 513 (Bankr. D. Ariz. 2000).

2

3    **B. Right to Jury Trial**

4    While Defendants demand a jury trial, they do not establish that they actually have a right

5    to such a trial under the Seventh Amendment.  The complaint, under the bankruptcy and

6    California causes of action, seeks "an order declaring that Defendants hold the Property and/or

7    any proceeds from the sale of the Property, in trust for the bankruptcy estate; that the transfer be

8    rescinded and avoided, and that Defendants return the Property, or its value to Trustee, together

9    with such other amounts as may be proven herein, plus interest thereon at the maximum legal

10   rate from a date no later than the date of this complaint; for an accounting by Defendants for any

11   profits realized by their wrongful conduct, as alleged herein." Doc. 1, Complaint, at 6:1-7.

12   It is not at all clear that there would be a Seventh Amendment right to jury trial in these

13   circumstances.  In an important case delimiting the right to jury trial, the U.S. Supreme Court

14   said that when a bankruptcy trustee sought to recover a money payment through a fraudulent

15   conveyance action under 11 U.S.C. §548, the suit resembled breach of contract suits for which

16   the Seventh Amendment right attaches. Granfinanciera, S. A. v. Nordberg, 492 U.S. 33, 56

17   (1989).  However, this case involves an action to avoid a property transfer, not a pure monetary

18   transfer.  In one old case, the Ninth Circuit specifically found no right to jury trial in a factually

19   analogous situation:

20   The relief prayed for in the amended complaint by the trustee in bankruptcy was a decree
     that the conveyances were fraudulent and void as to the trustee and as to the creditors of
21   defendant Ruth Vena Johnson; that the recorded deeds purporting to convey the real
     property in suit be ordered cancelled of record, and the record title of such real property
22   be vested in the trustee in bankruptcy for the estate of Ruth Vena Johnson, also known as
     Ruth Boyce; that defendant Ruth Vena Johnson be required to account to the plaintiff
23   trustee in bankruptcy for all rents, issues and profits collected from such real property and
     used by her, and that a money judgment be rendered against her in favor of plaintiff
24   trustee in bankruptcy as may be determined by the court below to have been so
     wrongfully used by defendant Ruth Vena Johnson; that plaintiff recover costs of suit and
25   be accorded such further relief as the court deemed just and equitable in the premises.

26   ****

27   The right to a jury in the domain or field of equity such as is here involved is
     determinable by the issues of fact that are pleaded in the concrete suit and the type and
28   quality of the remedies that are applicable and available to the suitor. This has been the

6

yardstick which has been applied under both the ancient divisions of law and equity and the single civil action in the unified procedure under the federal rules.

It is pellucidly clear from a consideration of the pleadings, findings, conclusions and the judgment in the record before us that the action in the District Court was entirely and essentially one of equitable cognizance. There was no demand for monetary relief except such as might be awarded against the bankrupt as a corollary to an accounting which is in an historic field of equity jurisprudence.

The gravamen of the suit and the crucial issue in it is the fraud that is alleged in the amended complaint to be the actuating means of the conveyances of the real property which the trustee seeks to recover for the bankrupt estate. Thus the wrong wrought by the fraud is not remediable at law in any efficient and practical way, and the historical equitable relief by cancellation of record is the only adequate and complete remedy.

Under such a situation, while it is true that the fraud alleged in the amended complaint is a question of fact in the suit, it is not one which under the record the chancellor was required to call the jury to decide.

Johnson v. Gardner, 179 F.2d 114, 115-7 (9th Cir. 1949), citations omitted.  In general "an action to recover for an alleged fraudulent transfer of real property is generally a creature of equity for which there is no right to a jury trial." Treinish v. Glazer, 248 B.R. 528, 532 (Bankr. N.D. Ohio 2000), citing In re Pasquariello, 16 F.3d 525, 529-30 (3rd Cir. 1994) and Damsky v. Zavatt, 289 F.2d 46, 53 (2nd Cir. 1961).  Defendants have not met their burden of demonstrating a right to jury trial.

**C. Permissive Withdrawal**

At base, this is a case concerning avoidance of an allegedly fraudulent conveyance. "[P]roceedings to determine, avoid, or recover fraudulent conveyances" are core bankruptcy matters. 28 U.S.C. §157(b)(2)(H).  "[T]he bankruptcy court may enter final judgments in so-called core cases, which are appealable to the district court." In re Castlerock Properties, 781 F.2d 159, 161 (9th Cir. 1986), citing Production Steel, Inc. v. Bethlehem Steel Corp., 48 B.R. 841, 844 (M.D. Tenn. 1985).  The court notes that in a recent Eastern District case, a bankruptcy judge ruled on an adversary proceeding alleging fraudulent transfer under both 11 U.S.C. §548 and Cal. Civ. Code §3439.05 with the case reaching the district court only on appeal. See Campos v. Wells Fargo Bank, N.A., 345 B.R. 678, 685 (E.D. Cal. 2005).  The district court has no familiarity with either the adversary proceeding or the Debtor's underlying bankruptcy.

Leaving this case in the bankruptcy court would provide for efficient use of judicial resources. There are no allegations of forum shopping and no indication that resolving the matter in bankruptcy court would result in delay relative to resolving the matter in district court.

## IV. Order

Defendants' motion to withdraw reference of the adversary proceeding is DENIED.

IT IS SO ORDERED.

**Dated:    February 9, 2007**          **/s/ Anthony W. Ishii**
0m8i78                         UNITED STATES DISTRICT JUDGE

8